Next case is number 24-2574. Alice M. Carr against Jefferson Defined Benefit Plan et al.   May it please the court. Good morning, your honors. My name is Ken Berman, and I have the pleasure of representing the appellant, Alice Carr, in this appeal. Ms. Carr is present in the courtroom today. I'd like to reserve two minutes for a rebuttal. Granted. This case is about ensuring that the fundamental protections of ERISA are upheld for a plan participant like Ms. Carr, who relied to her detriment on representations by the plans fiduciaries. I respectfully ask this court to reverse the district court's rulings on three counts under ERISA and restore Ms. Carr's rights under the law. There's no reason for a remand. The parties agreed to try the case on the record, which was filed in the docket and is before you. Your review of the dismissal of count three, which is the fiduciary duty claim, and count two, which is the penalty claim, is de novo. And regarding count one, which is the denial of Ms. Carr's motion to strike the appellee's untimely answer, if you find the denial was improper, then there's a deemed admission of the benefit claim and the document penalty under a federal rule civil procedure 8B6. Additionally, the court requested supplemental briefing last week on the question of whether Ms. Carr has standing to seek equitable monetary relief under ERISA 502A3. Before reaching the age of 65, both parties submitted briefs and based upon the appellee's brief, they have conceded the issue of standing. The most important fact that I really want to emphasize to the court today is after Ms. Carr worked a dozen years as a nurse at Abington Hospital, in 2010, she visited the HR department and spoke with the benefits coordinator to ask and discuss her pension status. And Linda Colflush was the benefits coordinator who informed Ms. Carr she had accrued four years of vesting service and only needed one more at that point. Mr. Berman, I think we're familiar with the factual allegations, but let me ask you, in count three, I gather there are really two different theories that you put forward. One is the denial of benefits itself as a basis for monetary equitable relief. And the other is this theory of representations and reliance that would have allowed her to make some different decisions if she had not accrued enough time and could resume work. As to standing, there needs to be for causation some way that her injury could be remedied. I guess I'd like to understand, given the allegations of the complaint, where it's alleged she was unable to work when she went out on leave, and that she was then determined in connection with her workers' compensation compromise that she was permanently disabled. How it is that even with reliance, she'd be able to return to work and accrue the additional hours to the extent that that's the theory on which you're seeking standing? Yes. Well, Judge Krause, Ms. Carr had corrective surgery for her injury, and she pursued a workers' compensation claim. And at the end of that claim, she made the decision to settle that claim and not return to work. At that point, she could have, when she decided the workers' compensation, yes. Okay. However, well, yes, I believe that's been developed in the record. I can't give you a pinpoint citation, but Ms. Carr certainly would have and has, in fact, continued to work. Yes. I'm sorry. I can't give you a specific reference. I don't have the complaint in front of me. It's obviously in the record. But to answer your question, in the workers' comp case, when that case was settled, she could have decided to go back to work, I believe, and would have had she thought that she was not fully vested. Have I answered your question? Is there an allegation that she would have retired? I believe that as part of the workers' compensation negotiation, that was a negotiated condition in that compromise and release agreement that she would retire and she would not return to work. And she negotiated that compromise and release agreement under the that she was fully vested. That could have been. I'm sorry. I can't give you a pinpoint citation to answer that question. Can you answer the question without a pinpoint citation? Yes. No rational person would forfeit a retirement, a pension, without any good reason. I'm sorry. I was asking if you could answer Judge Chung's question without having to cite something directly. I was interested in the answer to her question. Instead of answering it, you said, I don't have a pinpoint citation. But I was wondering if you could answer the question independent of a pinpoint citation. I believe there is a lengthy, several paragraphs that detail the factual allegations about the fiduciary representations and her decision to retire that was based upon those representations in the complaint. Maybe it was paragraph 66. I'm trying to recall without having that in front of me. But there were. I'm sorry. Yes. And that settlement was predicated upon her belief that she was fully vested. Yes.  Yes. Yes.   It's designed to make a plaintiff whole for the loss of rights. So even though it is a monetary penalty, it is equitable in nature as a make-whole remedy. And it's flexible. It's not a dollar-for-dollar equation. Yeah. Well, what we're asking for is an equitable surcharge, which is not necessarily tied to the benefits she would have received. But she did, because of the dismissal of count three, lose her pension rights, whether that's an early pension, whether that's a full pension at age 65. She lost her rights by relying on the fiduciary misrepresentation. And so the remedy is a flexible remedy. We're not asking for a specific dollar amount that equates to her pension benefits. And I believe that's where... As for disgorgement, the profit would be the benefits that were retained by the plan as invested that should have been... that Ms. Carr would be entitled to. That's the same as the benefits she should have received, though, right? No. The benefit would be whatever monies the plan retained and invested as part of their investment portfolio that the profit on an investment belongs to the plan.  So it's the benefits plus the return on investment of the benefits. Yes. Yes, essentially. Yes. Yes. I'm sorry, say that again. Well, the plan merged, and the funds from the Abington plan were transferred to Jefferson. Currently held, and I believe Jefferson has filed an agreement that it would be responsible for paying over any benefits that are ultimately awarded. If I'm not mistaken, count the breach of fiduciary claim applies to the three other defendants. The breach of fiduciary duty, yes, Jefferson is the successor to the Abington plan, and I believe their fiduciaries, their funds are at this point... At this point, yes. So, discouragement is a different theory than a surcharge, right? Yes. To the extent we're talking about discouragement, we have Great West that says that discouragement can only be used to recover defendants' use of a specific identifiable property to which the plaintiff has a specific right, a greater right. And then we have Montanil and Thole that indicate that these sorts of benefits are general, not specific. How, then, is discouragement a viable theory of liability for you? For Ms. Carr in particular, or you're asking in general? For your client. Ms. Carr, well, I believe that the discouragement remedy has been approved as an equitable remedy under 502A3 by the cases you mentioned. And I don't really understand the dilemma that you're asking. So, Montanil says that funds can't come from the defendant's general assets, and Thole, that participants in a defined benefit plan don't have a claim to a particular asset. You need a claim to a particular asset in order to raise discouragement as a theory of liability. So, I understand surcharge may be a different theory to pursue, but help me understand how discouragement is a viable theory of liability for Ms. Carr. Well, in any plan like this, which is a conglomerate of many smaller plans that merged in, there is no individual fund within that fund. The funds are co-mingled. And if it were true that you had to identify the funds that Ms. Carr, then there would never be a possibility of discouragement. But obviously, that's not what the courts have intended. This remedy has been well established, and I believe that the relevant issue is whether there was a breach of fiduciary duty, in which case the discouragement of profits would be the benefit that would otherwise be payable, plus any accrued interest. I don't think the case requires that you segregate funds in a multi-employer plan that's been merged like this. So, when you say it's well established, what is the set of cases outside of Great West, Montanil, and Thole are you relying on? I'm sorry, Your Honor, but the cases that I cited in my brief is what I rely on. And I don't know that any of those cases would say in a multi-employer plan that you have to somehow identify and segregate funds that have been co-mingled. This kind of a plan is a conglomeration, and assets are co-mingled. There are no individual accounts. All right. Thank you. Did you reserve time for rebuttal? Two minutes, please. Okay. We'll hear you on rebuttal. Thank you. Okay. Mr. Kreisky? May it please the Court. I'm Raymond Kreisky of Goshen O'Connor, and I represent the Jefferson Defined Benefit Plan and the other appellees in this appeal before the Court. We're here today on Ms. Carr's appeal of the district court's dismissal of count three of her complaint, which is the Section 502A3 claim, for appropriate equitable relief. And on her appeal of the district court's dismissal of most of count two, which was a monetary penalty claim brought under ERISA under Section 502A3, and on her appeal of the district court's discretionary decision to remit a late-filed answer to the complaint. Let me first address the questions that have been raised by the panel as to injury, standing, and perhaps even in our own supplemental brief, we may have confused the merits with the issue of constitutional standing and injury, in fact. But if we take a look at the complaint in terms of what Ms. Carr alleged, she alleged that on March 23, 2015, that she executed a worker's, this is in paragraph 21, on AP246, that she and Edmonton Memorial Hospital executed this release agreement. As we've heard from Mr. Berman, that release agreement, as he has said, contained a commitment of retirement. And she filed a worker's compensation claim representing to the Pennsylvania Workers' Compensation Board that she was unable to work. Then what she also alleges in paragraph 22 is that on April 29, 2015, the Social Security Administration notified Ms. Carr that she was disabled under Social Security rules as of 2012 and was entitled to benefits from that point forward. Being disabled under the Social Security rules means you're totally unable to work in the workplace. So in response to the questions here, there really wasn't any reliance on any kind of statements, putting aside all those fact questions that we've never litigated before the district court. But there, their, their request to amend. So should, why should, the, under Fletcher-Harley, which is the Third Circuit case from 2007 that we cited in our briefs, the Third Circuit has said that it is incumbent upon the plaintiff to submit a proposed amendment so that the district court can determine in the first instance whether that amendment would be futile. And I know that appellants have cited other cases, but those cases are all civil rights cases. And the Third Circuit has distinguished between the, and the Supreme Court, between the civil rights cases in which there should be a sua sponte order by the district court to have an amended complaint, versus the non-civil rights cases, such as this ERISA case, in which it would be incumbent upon the plaintiff to submit a proposed amended complaint to the district court in the first instance. At no point in time did, did Ms. Carr submit a proposed amended complaint to the district court. And, and I think it's also telling that in the two briefs that Ms. Carr submitted to this court in this appeal, she has not identified anything that she would say in an amended complaint that would salvage count three from dismissal. So it was really incumbent upon Ms. Carr to have taken the action to submit a proposed amended complaint through a motion. But I wanted to just address the complaint facts with regard to the issue of reliance and injury to the extent that that's a merits question or a constitutional standing question of whether or not she could have an injury in fact. We also addressed in our supplemental brief on that standing question the issue of an early retirement benefit, which is what we understood Ms. Carr to be seeking in 2022 when she submitted her claim. But it may be that she has, from their, Ms. Carr's supplemental brief, it appears that it's an age 65 benefit that she wants. And there cannot be any kind of standing for an age 65 benefit. Even under count three, there has to be some kind of connection to the benefit because that's what she's connecting everything to. And, and she has not turned age 65, will not turn age 65 until December of 2026. So there cannot be any injury in fact, if indeed the remedy that's being sought is somehow connected or tied to an age 65 benefit. Your response to our request for supplemental briefing indicated that your interpretation of what the plan provides allow her to undertake the early retirement and to, it would then vest if she had accrued the the requisite number of hours. Correct. So, so we understood that she was always pursuing an age, an early retirement benefit. There's pleading allegations and references in the complaint to early retirement. And so, and there is the pension benefit statement that's part of the identified different benefits, different levels at different ages. So that's why we submitted to the court our understanding is that that's what she was seeking. And that's what she was obviously tying her claim to. I also want to address the issue of discouragement of profits, which the panel has raised. And to make the point that on, on appeal of the dismissal of count three, Ms. Carr did not and has not in either of her appellate briefs raised discouragement of profits as the equitable remedy that somehow would save her count three from the dismissal. That's always strictly surcharge. Correct. That is because. And the district courts have disagreed about pleading in the alternative. The cases are, are quite all over the place. What if we agree with the side that says that you can plead in the alternative? Assume that we decide that. Why do you prevail? Even if we say that the time to dismiss count three should come after it becomes clear through discovery that it's duplicative of count one, that she does have an available remedy at law. Well, first of all, it was incumbent upon Ms. Carr to raise to this court on appeal the basis for, for reversing the district court. And she did not raise an issue of discouragement of profits as a basis for reversing the district court. No, but what about surcharge? Oh, she has raised the issue of surcharge. Yeah, right. And what I'm saying is some courts have said that you can't plead both the remedy at law and the equitable remedy of surcharge. You got to pick one. Other courts have said you can plead them in the alternative, but as the case goes along, if it becomes clear that they're duplicative, then one has to fall away that you can't recover under both. Assume that we take the latter view. Why do you still prevail? I understand your question. Why is count three out if we take, if we accept the latter view? If I understand Your Honor's question, I think it's now relates to the verity issue of whether or not you can, you can file alternative. And the answer is what the panel has already been probing, which is that there, this is essentially a claim, as the district court correctly concluded, for monetary relief. Great West controls. On the verity argument, I, right. And my understanding of the question is just assume that this court would side with the verity does not preclude alternative pleading at the, at the pleading stage. Correct. And so, and so we went on the merits is the answer and that the district court correctly determined that the relief that's being sought in count three is monetary relief. And that under Great West, we can't just apply labels to things that are actually monetary. But is it enough to, to classify it as monetary? Is it the surcharge remedy, an equitable remedy that can take the form of money damages? I know that those things are typically inconsistent. We typically think of money over here and equity over there, but isn't it the case that surcharge is a little different that you can still invoke the equitable remedy of surcharge and end up with a result that is, is money in the plaintiff's pocket? According to the dicta in Amara, yes, that is a possibility. That is in the state of flux now in light of the Montanil statements and comments as to whether or not the dicta in Amara should be at least adhered to. So is there a threshold question as to whether the surcharge remedy can be actually invoked? But assuming that to be the case, yes, I'm sorry. Isn't the right way to reconcile those that in Amara, we're dealing with a fiduciary and in Montanil and these other cases, we're not. And to the extent here, the claim is breach of fiduciary duty, then that would suggest that surcharge is available as a claim here. Well, as Mr., as the appellants even acknowledged in their brief, the Fourth Circuit has held the other way, that indeed there is no such distinction that is material distinction for purposes of the analysis and that really Great West controls and that Amara was dicta and that Great West and the principles of Great West that Your Honor actually has raised in this argument control. And that you can't, as Montanil says, plaintiffs cannot enforce an equitable lien against the general assets. That's what Ms. Carr is seeking to do in this particular case. Um, well, we've relied on Great West since it's the Supreme Court and it has a thorough, detailed explanation. We've also cited Montanil. And so I apologize to the court if I had missed that particular Third Circuit case. Um, no, I think obviously the panel is bound by a prior court's decision. But I think that Great West really just answers the question. Great West is a holding. It is a dispositive. It is binding as compared to the dicta in Amara. Montanil is also binding in terms of the principles. And when we combine these cases, what the Supreme Court is telling us is that we need an equitable claim with equitable relief. And in this case, we generally need something like a constructive trust, something that's traceable to specific property, not general assets of the plan, but specific property that it attaches. So that's why the concepts of constructive trust or equitable lien by agreement that the Supreme Court has raised would be vehicles for 502A3 relief. Those vehicles don't apply here. Well, because there's no specific property traceable within the plan that Ms. Carr can say that she would attach to. That's a problem for disgorgement, but why is it for surcharge? Well, I think what the Supreme Court has said, and if I could look at the Montanil footnote that addresses Amara, it says, signally affirms that relief that sought a lien or constructive trust was legal relief, not equitable relief unless the funds in question were particular funds or property in the possession. And then it goes on to say that we must reinforce our interpretation of equitable relief in Great West. Well, our position is that Great West still directs that there be some kind of tracing, and the tracing concept through Sereboff as well as other cases is what is required in order for there to be equitable relief of the type that was typically available in equity. And I should note as a final point, and I know my time has run out, but that Great West also talked about not following trust law remedies. And specifically, the Supreme Court said trust law remedies are really an apposite to our analysis of what is typically available in equity. And I know that that's a different question and issue that has not been briefed before this court, but that's what the Fourth Circuit sort of relied on in terms of following it and making its decision that surcharge is not compatible with 50283. Mr. Kresge, is it fair to say that the essence of your argument is that count three is not truly an equitable claim on the facts of this case? It's just count one in masquerading an equitable garb? Yes, Your Honor, it is. And we've decided in our It was sort of an Ipsit-Dixit conclusion, right? Well, the district court reached a conclusion that it was, I don't have to recall the exact language, but that it was cloaked in equity. Well, it says here Ms. Carr's claim for injunctive relief is a claim for her pension benefits dressed in the cloak of equity. The request for relief simply focuses on resolving her adverse benefits determination. It's indistinguishable from a claim for monetary relief. And that is supported by the complaint. So if we take a look at AP 263, the allegations are that the plan failed to investigate the benefit claim fully and fairly. The plan failed, relied on insufficient evidence and ignored countervailing evidence in reaching the final determination of denial. The plan failed to credit Carr with all service hours. Defendants violated their fiduciary duties by failing to act in accordance with the plan documents and by failing to properly evaluate the claim for benefits. That's a 50281B claim, but it's split in count three. Okay, thank you very much, Mr. Kresge. Let's hear rebuttal from Mr. Berman. Mr. Berman, may I ask you to start where Mr. Kresge just ended? He just read the averments that do seem to support his argument that the district court got it right when it said that count three is cloaked in equity, but it's just a redux of count one. First of all, the district court dismissed count three before deciding the benefit claim, which was not appropriate. It should have been done later, and if it appeared there was no benefits due, fine. But... I'm not sure that helps you because we could affirm for any reason and even if he did things out of order, then we still have to consider or we should consider what happened after the dismissal order, right? But shortly after that, Your Honor, we had a Rule 16 conference, and I submitted a Rule 16 status memorandum where I specifically stated that I intended to file a Rule 59 e-motion, and I wanted to seek discovery on the breach of fiduciary issue. And at the Rule 16 conference, we discussed that specific point. And in the motion to Mr. Kresge's motion to dismiss in my opposition brief, I specifically said that if the court finds that they're going to dismiss count three, I requested the ability to amend. And that's consistent with all the cases I cited in my briefs. No, it's not. But the case law is not limited to 1983. I think that the 1983 distinction was in those cases the court has to, must, grant amendment sua sponte even if a request isn't made. But I specifically made the request. I didn't see... I read all those cases, Your Honor. I didn't see any requirement that I have to file a proposed amended complaint beyond making the court aware. I didn't see any case law to support the idea that without me filing a proposed amended complaint, the court didn't have to consider my request. And in fact, to the contrary, the case law seemed to that these denials should be disfavored. Where did you make the request? You said at the Rule 16? In my motion, in my opposition to the motion to dismiss, I specifically stated if the court grants this motion, I ask permission to file, for leave to file an amended complaint. All right. And then the court grants the motion to dismiss and demurs on you filing an amended complaint. And then we came to the Rule 16. Okay. So then what should happen is then you file a motion for reconsideration or motion for leave to file amended complaint. But you did neither of those. Well, days later, we had a Rule 16 conference where we discussed this. I stated my intent, but we had a discussion and made this clear. Nobody said, oh, wait a minute, this is not really a motion to amend. Aren't you tasked with knowing what the rules are? Yes, of course. But there was no, opposing counsel did not say, oh, this is not, this is a motion for reconsideration, really, and it has to be filed within 14 days. I made it very clear what my intention was. And there was never any indication that that was, that there's some other procedure was necessary. I mean, the case was still pending. You weren't out of court. You were out of court on count three, but you weren't out of court, right? Correct. So was there anything to impair you from, at any time while the case was progressing, filing a motion for leave to file an amended complaint? Well, I thought that the Rule 59e motion would encompass that. And then the judge dismissed that. Well, the judge considered it as a motion for reconsideration. And you have not appealed that. No. So we're stuck with that. Yes. But, yes. I would just like to point out a couple other brief things. I look back at the complaint. You asked a question. And in paragraph 106 of the complaint, paragraphs G and H, there are specific allegations that after Ms. Carr's work injury, she went back to Abington Hospital and shadowed the director of the nursing school where she worked. And the planned fiduciary told her to leave the building. And then she called and spoke with the corporate benefits director, who she knew personally. And he said, we have no record of your employment. That's what was so frustrating to her. She was shut down and they denied even knowing who she was or having any record of her employment. That's why she called me. And she certainly, if she had any belief that she would have not been fully vested, in a worker's comp situation, that's a negotiation. And oftentimes, it happens after a work injury that in those settlements, there's a discussion about returning to work. You have that option. She made that decision based upon the belief that she was told she was fully vested at that point. And also, the Social Security Administration does not totally prohibit continuing to work. This was an option that would have been available that she would have exercised. But they threw her out of the building. They pretended not to even know who she was. And it was extraordinary. You're arguing that after Social Security, this determination that someone's disabled, that if it's advantageous to the disabled person to go back to work, they can just sort of go to Social Security and say, please change your mind that I'm disabled? I've never heard of that. Number one, the Social Security rules permit a certain amount of work every year. And number two, yes, people have surgery. Their impairment can be... So what was the change of circumstances here? The change of circumstances here, you're positing is a more advantageous pension benefit, not a change in her medical condition. Well, she did have corrective surgery. And she, in fact, has continued to... Paragraph 19 says Carr was unable to return to work at AMH after October 29th of 2012 as a result of her injury. Yes. The paragraphs you're pointing us to relate to conversations and shadowing in May of 2012. Yes. And subsequently to her call to David Levin, who was the Corporate Benefits Director. And they just shut her out. She had no recourse with AMH. They pretended not to even know her or have any record of employment. And so to say, well, why didn't she try to negotiate a return to work? Well, she was given a misinformation and then a stonewall saying, we don't even know who you are. It would have been futile and impossible for her to do that at that point. I just wanted to make a couple other quick points. I think you're correct. The equitable relief, if you reinstate count three, that I'm really seeking is an equitable surcharge. That's the gist of the claim, not the disgorgement remedy. With regard to the ultra pleading question that you raised, just one. I can't read my writing. I just have a final question for you because we've talked about the case laws to whether you can bring both the 502A1B claim and the 502A3 claim. Count one for the claim that would have been related directly to benefits. You opted not to appeal, right? The dismissal of that is not on appeal. At that point, yes. The third issue is really the procedural denial of Ms. Carr's motion to strike, which if you find that's an abuse of discretion, then that would require a deemed admission of all facts in counts one and two because there's no answer. That's Federal Rule Civil Procedure 8. Why don't we have count one in front of us on appeal? I thought this was the stronger argument, Your Honor. As you know, the standard of arbitrary and capricious is very high. Although we disagree with that, I presented evidence that Abbington paid Ms. Carr for more hours than they gave her credit under this last payroll period accounting method. They actually paid her for more than 1,000 hours in 1997. But, Judge, the District Court referenced legacy records that even though the employer and the fiduciary did not maintain payroll records necessary to really answer her benefit claim, Section 209 of ERISA requires that. Well, it required when the plan transferred in 2018 to Jefferson, they needed to transfer that information to Jefferson. Well, all I know is that ERISA 209 requires employers to retain all records that are necessary to determine benefits. And if you're talking about... Well, well, I don't, if you're talking about the statute of limitations, I... I'm sorry, Your Honor, I can't speak to that. But I don't see how that can possibly vitiate Section 209, which has an absolute requirement and a whole procedure where employers must retain these records and transfer them to fiduciaries, and the fiduciaries have to generate reports based on that. All that was omitted in this case. And so all that the plan fiduciaries referred to were these legacy records that just had a number on a page, a number of hours with no backup. But I was concerned that the District Court said, oh, well, there was something that the fiduciary looked at to, you know, make its decision, even though it wasn't payroll records which would have And even though I proved that she was paid for more hours than she was given credit for, I thought the stronger argument was to say, well, wait a minute, if this amended, this answer to the complaint was filed six months late, the day before summary judgment, briefs were due. Without any seeking my consent or leave to file, no reason given, nothing. And the whole idea of prejudice that the District Court considered or failed to consider, the District Court said in its ruling that the parties agreed to waive discovery, so therefore there's no prejudice. I never agreed to waive discovery. I said, to the contrary, I wanted discovery. And so that ruling was based upon an error, a finding of fact that was erroneous. And so I thought the better argument was to say, the District Court decided this, denied the motion to strike based upon a clear mistake. And if you find that was an abuse of discretion, then Rule 8 kicks in, there's no answer that's filed, the allegations of Count 1 and 2 are deemed admitted, and then that's a clear path to an award. Rather than getting into arbitrary and capricious and what, you know, documents the fiduciary had available and considered, despite overwhelming evidence that they paid her for more than the required hours. All right. We've given you over 12 minutes extra time. We understand your position, Mr. Berman. Thank you. And thank you, Mr. Kresge. The Court will take the matter under advisement. Thank you very much.